TEXTILE WORKERS PENSION FUND and John Agnello, Noel Beasley, Harold Bock, John Buck, James Brubaker, Brian Curtis, Louis D'Amico, Agnelo Decosta, George Degray, Bruce A. Dunton, Ralph Guerriero, William T. Lee, Richard A. Macfadyen, Mark Pitt, Bruce Raynor, Henry A. Scheyer, Jr., George W. Shuster, William A. Smetts, and Robert Standen, as Trustees of the Textile Workers Pension Fund, Plaintiffs,

v.

FINDLAY INDUSTRIES, INC., Defendant.

No. 97 CIV. 9277 RO.

United States District Court, S.D. New York.

March 26, 1999.

Schulte Roth & Zabel, LLP, New York, NY by Ronald E. Richman, Morton I. Lorge, for Plaintiffs.

Peter G. Eikenberry, New York, NY, for Defendant.

### MEMORANDUM and ORDER

OWEN, District Judge.

Plaintiff Textile Workers Pension Fund ("Fund") is a trust fund administered in accordance with an Agreement and Declaration of Trust, as amended and section 302(c)(5) of the Labor Management Relations Act ("LMRA"). The trustees of the Fund are designated by local unions affiliated with the Union of Needletrades Industrial & Textile Employees and employers who have collective bargaining agreements with the Union. Employer and union designees are equally represented on the Fund's Board of Trustees.

The Fund provides retirement benefits to employees of contributing employers to the Fund in accordance with a plan document and the Employee Retirement Income Security Act of 1974, as amended ("ERISA").

Defendant Findlay Industries Inc. headquartered in Findlay, Ohio is engaged in the business of manufacturing parts for automobiles. Pursuant to four separate collective bargaining agreements with four different locals of the union, Findlay contributes to the Fund on behalf of its employees located at five different operating divisions. Findlay has never made contributions to the Fund based on vacation pay and holiday pay.[1]

This action was tried before me without a jury on December 1, 1998, plaintiff Fund seeking unpaid contributions back to 1991 based on Findlay's payments to employees for vacations and holidays, liquidated damages, an injunction and other related relief. Findlay denies the Fund's right to any recovery or relief and in effect seeks a declaratory judgment in its favor.

The underlying principal issue before the Court is:

Are the collective bargaining agreements between Findlay and its four local unions ambiguous as to whether Findlay is required to make contributions on vacation and holiday pay or not? While Judge Baer denied both parties' summary judgment motions stating: "[T]here are disputed issues of material fact with respect ... the ambiguity of the labor contracts[,]" the evidence at the trial established that Local 981 contracts of 1991 and 1995 require contributions to the Fund "per hour worked[,]" and all other contracts between Findlay and its locals require contributions to the Fund "per hour".

To the extent the contracts could be viewed as ambiguous, however, the various parties, Findlay, the Unions, and the Fund have interpreted or accepted the contracts between Findlay and its locals as requiring Findlay to contribute only "on hours worked". The uncontradicted testimony is that Findlay has only paid "on hours" worked from 1973 to date. The 1973 contract between Findlay and Local 981 stated that Findlay was to make contributions to the fund on a "per hour compensated for" basis. As observed later, Findlay has contributed to the Fund only for each "hour worked" and not on vacation or holi-

---

1. The Fund has 136 participating employers. Findlay is the only one that does not contribute on vacation or holiday pay. The Fund has a provision in its Plan adjusting for "Non Standard Employee Contribution[s]." It has, however, never adjusted for Findlay's non standard contributions, even though it has known of them, certainly as far back as 1987, if not long before (see, *infra*).

day pay starting in 1973. The 1976 contract with Local 981 stated that Findlay was to make contributions to the fund on a "per hour" basis. In 1981, the Fund adopted a rule providing for an adjustment to pension benefits for a non-standard contribution but the Fund has never reduced any Findlay union member's pension benefit under that provision calling for an adjustment in the event of a "non-standard contribution" by an employer. In 1983, the Fund conducted an audit of Findlay's contributions to the Fund for the period 1980 through 1982. While Findlay was invoiced for certain deficiencies, and paid the invoices, the audit documents do not discuss vacation pay or holiday pay.

From 1983 to date Findlay has continued to contribute to the fund "per hour worked" and not on vacation and holiday pay. In 1986 the Fund conducted an audit of Findlay to determine compliance by Findlay with its labor contracts for the period January 1, 1983 through December 31, 1985. Pursuant to this audit, in 1987, the Fund did invoice Findlay for contributions allegedly not paid by Findlay to the Fund relating to vacation hours and holiday hours for the said audit period. Findlay did not pay the 1987 invoices for the said hours and wrote the Fund so advising it. The Fund thereafter made no claim for payment of the 1987 invoices. If Findlay had known that the Fund would press the claim that Findlay's contributions between 1973 and 1987 were improper, Findlay could have negotiated the issue in the collective bargaining in connection with the 1988, 1991, 1995 and 1996 contracts. The 1988–91 Findlay Collective Bargaining Agreement with Local 981 states that the Company is required to contribute to the Fund a number of cents "per hour," and the 1991–95 agreement states that the Company must contribute to the Fund on behalf of covered employees a certain numbers of cents "per hour worked." The pension provisions of the contract effective for the period March 1, 1995 through February 28, 1999 (except for number of cents) are identical in all material respects to the pension provisions in the prior Local 981 contract. In 1996, Jerry Lelko of Amalgamated Life Insurance audited Findlay on behalf of the Fund. He wrote in his notes that "as with all the divisions of Findlay Industries, the contract does not state as to which hours contribution should be made on" and as to one contract, "retirement contributions are to be made on hours worked." However, Fund Manager Rust directed Lelko to proceed with the audit as if the contracts read otherwise. Taking that conclusion, the Fund demanded back contributions for the first time since the 1987 invoices, and then sued when the demand was rejected.

The foregoing, coming mainly from documents and party admissions, was fully supported on the trial by the testimony, Fund Manager Rusts's self-serving naked opinion to the contrary notwithstanding.

Martin Terry, a financial officer of Findlay for the entire period of the union contract with Findlay until he left to become a financial officer of Findlay College in 1998, testified that Findlay has been contributing to the Fund for twenty-five years on the basis of hours worked and not on vacation and holiday pay. Mary Corbin, a management employee of Findlay testified she took part in the 1991 union contract negotiations. The word "worked" was added to the words "per hour" in the contract which clarified Findlay's obligation to contribute to the Fund. Ms. Corbin testified in her deposition that she and Fran Mullin, the union president, both took notes and compared them. Changes were only made from her notes and Mullin's notes, and Mullin reviewed all changes to the contract after they were typed by Corbin.

Mullin on her deposition, confirmed that Findlay has always contributed to the Fund on hours worked. She testified that in the 1991 contract negotiations, the question of pension contributions for holiday or vacation pay never came up. She reviewed all changes that were made after

the negotiations, and it was her testimony that the changes which included the addition of the word "worked" were circulated to the union membership and ratified by them.

I find the foregoing facts to be unequivocally established, most by admission or lack of contradiction.[2] This being so, to the extent there heretofore existed arguable ambiguity, it is resolved in Findlay's favor that is, that Findlay is only required on the contracts before me to contribute to the Fund for "hours worked", not on holiday or vacation payments. This is so not only because a number of the contracts used the phrase to the Union's knowledge—"hours *worked*" but none of them go the other way, and Findlay and the Unions have acted accordingly going back to the 1970's and the Fund has *knowingly* accepted Findlay's construction since 1987. This disposes of the mutual mistake claim the Fund makes, and even if there had been, the Fund has waived it and/or is estopped from asserting it. *Allen & Co. v. Occidental Petroleum Corp.*, 382 F.Supp. 1052 (S.D.N.Y.1974)

Accordingly, all claims by plaintiff Fund are dismissed on the merits and the collective bargaining contracts before the Court on this trial are construed and to be honored by the Fund for the balance of their terms in accordance with the foregoing. This constitutes the Court's Findings of Fact and Conclusions of Law and is so ordered.

---

2. I completely reject Rust's self-serving contradiction of the independent auditor's construction of these agreements, see *supra*, which subverted the auditor's independence. I also observe that the Fund's claim in its Pretrial Memorandum, p. 8, that

"... [p]rior to this lawsuit, Ms. Mullins ... had never considered whether the Company was required to contribute to the Fund for unworked, compensated hours, such as vacation and holiday pay." (Emphasis supplied)

is contrary to the record which supports Findlay's position, Mullin's repeated clear deposition testimony being:

A. I've looked at pension reports and knew that we were supposed to be paid on the hours we worked in a month.

Q. And as far as you know, that's how it was done?
A. Yes.
Q. Was that ever an issue in any union negotiations as to having it done in any different way?
A. No.

\* \* \* \* \* \*

A. ... in my mind it had always been per hours that we worked.
Q. What had always been per hours that you worked?
A. The pension contribution was for the hours that I worked....